IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DONALD WAYNE SNELL, Administrator of the Estate )
of Deborah Price Snell, deceased, )
)
    Plaintiff, )
)
v. )
)
MONTGOMERY REGIONAL HOSPITAL, INC. D/B/A )
LEWISGALE HOSPITAL MONTGOMERY, )
) Case No.: 7:15CV00457
EMCARE, INC., )
)
and )
)
BRYAN CARDUCCI, M.D., )
)
    Defendants. )

## COMPLAINT

The plaintiff, Donald Wayne Snell, Administrator of the Estate of Deborah Price Snell ("Ms. Snell"), deceased, by counsel, files this Complaint requesting the entry of judgment against the defendants, Montgomery Regional Hospital, Inc. d/b/a LewisGale Hospital Montgomery ("LewisGale"), EmCare, Inc. ("EmCare"), and Bryan Carducci, M.D. ("Dr. Carducci"), and in support thereof states as follows:

## JURISDICTION AND VENUE

1.    Ms. Snell was a citizen of the Commonwealth of Virginia.

2.    The plaintiff qualified as Administrator of the Estate of Deborah Price Snell, deceased, on March 31, 2015 in Montgomery County Circuit Court.

3.    At all times relevant hereto, LewisGale was a health care provider recognized and existing as a corporation under the laws of the Commonwealth of Virginia and doing business in Montgomery County, Virginia.

4. At all times relevant hereto, EmCare was a health care provider recognized and existing as a corporation under the laws of the Commonwealth of Virginia and doing business in Montgomery County, Virginia.

5. At all times relevant hereto, Dr. Carducci was a physician licensed to practice medicine in the Commonwealth of Virginia.

6. Dr. Carducci is a resident of North Carolina.

7. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 28 U.S.C. § 1367(a), and 42 U.S.C. § 1395dd.

8. This Court has personal jurisdiction over the parties pursuant to § 8.01-328.1 of the Code of Virginia and requisite minimum contacts with the Commonwealth of Virginia.

9. Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTS

10. The plaintiff realleges each of the allegations contained in the preceding numbered paragraphs.

11. At all times relevant hereto, there was a health care provider-patient relationship between the plaintiff and each of the defendants.

12. At all times relevant hereto, Dr. Carducci provided medical care to Ms. Snell within the course and scope of his employment with EmCare.

13. At all times relevant hereto, Dr. Carducci provided medical care to Ms. Snell within the course and scope of his employment with LewisGale.

14. At all times relevant hereto, EmCare was acting through its employees, agents, and/or servants including, but not limited to, Dr. Carducci.

15. At all times relevant hereto, LewisGale was acting through its employees, agents, and/or servants including, but not limited to, Dr. Carducci and its nursing staff.

2

16. On February 7, 2015, Ms. Snell presented to an urgent care facility as an otherwise healthy 51 year old with complaints of nausea, vomiting, and diarrhea with more than five loose stools per day for two days. She appeared toxic on examination.

17. Her abdomen was abnormal to percussion and diffusely tender.

18. Her pulse was 130, respirations were 22, and blood pressure was 100/60.

19. She was given medication to help with her nausea and vomiting and referred to the Emergency Department.

20. Ms. Snell went directly to the LewisGale Emergency Department, arriving around 8:00 p.m. on February 7, 2015.

21. She complained of nausea, vomiting, diarrhea, and abdominal pain.

22. Her initial vital signs revealed a pulse of 139, respirations of 20, and a blood pressure of 111/57.

23. Her hemoglobin and hematocrit were 19.7 and 58.

24. Her BUN was 49 and creatinine was 2.10.

25. She had acute renal failure.

26. She required 3.5 liters of IV fluid in order to urinate.

27. LewisGale had a severe sepsis screening protocol ("sepsis protocol") in place on February 7, 2015 in its Emergency Department.

28. During Ms. Snell's Emergency Department visit, the nursing staff and Dr. Carducci did not follow the sepsis protocol.

29. Neither Dr. Carducci nor the nursing staff recorded Ms. Snell's recent antibiotic use, which was part of the sepsis protocol.

30. The nursing staff did not record Ms. Snell's new organ dysfunction, which was part of the sepsis protocol.

31. The nursing staff incorrectly documented Ms. Snell had not been on antibiotic therapy.

32. The nursing staff incorrectly recorded that Ms. Snell had a normal chemistry panel.

33. The nursing staff did not complete a gastrointestinal assessment.

34. Dr. Carducci did not order a complete blood count or white blood cell count.

35. Dr. Carducci did not check Ms. Snell's lactic acid level.

36. Dr. Carducci did not order any radiology studies.

37. Dr. Carducci did not consider Clostridium difficile as a potential cause of Ms. Snell's symptoms.

38. Dr. Carducci did not take any steps to rule out Clostridium difficile as a potential cause of Ms. Snell's symptoms.

39. Dr. Carducci did not take any steps to admit Ms. Snell to the hospital or obtain any consultations with other medical specialties.

40. Dr. Carducci discharged Ms. Snell.

41. Ms. Snell was discharged shortly after 1:00 a.m. on February 8, 2015 after receiving 4 liters of IV fluid, more medication for nausea and vomiting, Morphine for pain, and Imodium for diarrhea.

42. Ms. Snell's blood pressure and temperature were not rechecked.

43. No one obtained any discharge vital signs or any vital signs for the last two hours of Ms. Snell's Emergency Department visit.

44. When Dr. Carducci discharged Ms. Snell, he knew her initial vital signs revealed a pulse of 139, respirations of 20, and a blood pressure of 111/57.

45. When Dr. Carducci discharged Ms. Snell, he knew her hemoglobin and hematocrit were 19.7 and 58.

46. When Dr. Carducci discharged Ms. Snell, he knew her initial BUN was 49 and creatinine was 2.10 and that they remained high.

47. When Dr. Carducci discharged Ms. Snell, he knew Ms. Snell's bicarbonate level was low.

4

48. When Dr. Carducci discharged Ms. Snell, he knew she had acute renal failure.

49. When Dr. Carducci discharged Ms. Snell, he knew she had required 3.5 liters of IV fluid in order to urinate.

50. When Dr. Carducci discharged Ms. Snell, he knew she had severe dehydration.

51. Ms. Snell was discharged with diagnoses of viral gastroenteritis, dehydration, and kidney failure.

52. Ms. Snell had signs of severe sepsis during her February 7, 2015 Emergency Department visit.

53. Ms. Snell was not diagnosed with Clostridium difficile or sepsis.

54. At home after her discharge, Ms. Snell did not improve.

55. The plaintiff took Ms. Snell back to the LewisGale Emergency Department on February 8, 2015, around 1:25 p.m.

56. During that visit, her initial white blood cell count was 68,500, her platelet count was 50, her BUN was 41, her creatinine was 2.50, and her lactic acid level was 13.1.

57. Her lab work was consistent with severe sepsis.

58. By 3:01 p.m., a CT scan had been performed and reported, which demonstrated diffuse thickening of the colon wall consistent with pseudomembranous colitis.

59. After coding several times and undergoing an attempted emergency colectomy, Ms. Snell was pronounced dead at 7:53 p.m.

60. Ms. Snell died on February 8, 2015 from septic shock due to Clostridium difficile.

### COUNT I – VIOLATION OF 42 U.S.C. § 1395dd

61. The plaintiff realleges each of the allegations contained in the preceding numbered paragraphs.

62. LewisGale is a Medicare participating provider that operates a hospital emergency department.

5

63. Ms. Snell presented to LewisGale's Emergency Department requesting examination and treatment for her medical condition.

64. Ms. Snell had an emergency medical condition.

65. LewisGale failed to provide an appropriate medical screening examination within the capability of its emergency department, including ancillary services routinely available to it (e.g. laboratory services and consultations), to determine whether an emergency medical condition existed.

66. LewisGale did not uniformly apply its screening procedures to Ms. Snell.

67. LewisGale's treatment of Ms. Snell deviated from how it would have treated other patients with the same medical condition and presentation.

68. The actions and omissions of LewisGale in failing to provide Ms. Snell appropriate and non-disparate screening, examination, and treatment violate 42 U.S.C. § 1395dd.

## COUNT II – NEGLIGENCE SURVIVAL ACTION

69. The plaintiff realleges each of the allegations contained in the preceding numbered paragraphs.

70. The defendants had a duty to exercise ordinary care in their care and treatment of Ms. Snell and to otherwise conform their medical treatment to the usual standard of medical care.

71. The defendants deviated from the applicable standard of care and were negligent in the following respects:

    a. Dr. Carducci failed to properly evaluate, manage, and treat Ms. Snell;

    b. The defendants failed to properly screen Ms. Snell for sepsis;

    c. The defendants failed to properly obtain Ms. Snell's history and relevant information;

    d. The defendants failed to document pertinent aspects of Ms. Snell's care and condition;

    e. LewisGale's nursing staff failed to obtain appropriate vital signs;

    f. LewisGale's nursing staff failed to properly assess Ms. Snell;

g. LewisGale's nursing staff failed to properly assess Ms. Snell's pain;

h. LewisGale's nursing staff failed to properly report abnormal laboratory results;

i. Dr. Carducci failed to obtain proper laboratory studies, radiology, consultations, and/or admit Ms. Snell;

j. Dr. Carducci failed to diagnose Ms. Snell's Clostridium difficile; and

k. Dr. Carducci failed to recognize the urgency of Ms. Snell's condition.

72. As a direct and proximate result of the defendants' negligence, Ms. Snell was caused to suffer great physical pain, physical and mental anguish, and other items of damage.

## COUNT III – WRONGFUL DEATH

73. The plaintiff realleges each of the allegations contained in the preceding numbered paragraphs.

74. As a direct and proximate result of the defendants' negligence, Ms. Snell died on February 8, 2015.

75. But for the defendants' negligence, Ms. Snell would have survived.

76. As a result of Ms. Snell's death, the plaintiff has incurred funeral expenses and her beneficiaries have suffered sorrow, grief, mental anguish, loss of companionship, income, services, protection, care, and assistance of Ms. Snell, and other items of damage provided for by Virginia Code § 8.01-52.

## CONCLUSION

The plaintiff moves the court for judgment against the defendants, jointly and severally, in the amount of TEN MILLION DOLLARS ($10,000,000.00) with interest thereon from February 8, 2015, plus taxable costs and such equitable relief as the court deems appropriate.

7

The plaintiff demands a jury trial.

                                              DONALD WAYNE SNELL,
Administrator of the Estate of Deborah Price Snell, deceased,

By: _____
                            Of Counsel

T. Daniel Frith, III, Esquire (VSB # 22065)
Lauren M. Ellerman, Esquire (VSB # 68464)
Lauren E. Davis, Esquire (VSB # 74066)
Frith & Ellerman Law Firm, P.C.
P.O. Box 8248
Roanoke, VA 24014
Telephone: 540/985-0098
Facsimile: 540/985-9198
dfrith@frithlawfirm.com
lellerman@frithlawfirm.com
ldavis@frithlawfirm.com

Beverly M. Davis, Esquire (VSB # 33784)
Davis, Davis & Davis Attorneys
519 2nd Street
Radford, VA 24141
Telephone: 540/639-9081
Facsimile: 540/639-9095
bevdavis@davisattys.com

       *Counsel for Plaintiff*